# FEDERAL TRADE COMMISSION, Appellant,

v.

## BEATRICE FOODS COMPANY and Tropicana Products, Inc.

### No. 78–1673.

United States Court of Appeals, District of Columbia Circuit.

Sept. 19, 1978.

Before WRIGHT, Chief Judge, and BA-ZELON, McGOWAN, TAMM, LEVEN-THAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

Upon consideration of the suggestion for rehearing *en banc* of 188 U.S.App.D.C. 438, of 580 F.2d 701, filed by appellant Federal Trade Commission, and a majority of judges of the Court in regular active service not having voted in favor thereof, it is

Ordered by the Court, *en banc*, that appellant's aforesaid suggestion for rehearing *en banc* is denied.

*Chief Judge* J. SKELLY WRIGHT did not participate in the foregoing order.

*Circuit Judge* McGOWAN would grant appellant's suggestion for rehearing *en banc.*

*Circuit Judges* BAZELON and LEVEN-THAL have abstained from voting on the suggestion for rehearing *en banc.*

Statement of *Circuit Judge* BAZELON, with whom *Circuit Judge* LEVENTHAL joins, on appellant's suggestion for rehearing *en banc.*

Statement of *Circuit Judge* McGOWAN, on appellant's suggestion for rehearing *en banc.*

Statement of *Circuit Judges* MacKIN-NON and ROBB, on appellant's suggestion for rehearing *en banc.*

Statement of *Circuit Judge* BAZELON, with whom *Circuit Judge* LEVENTHAL joins, on petitioner's suggestion for rehearing *en banc.*

The Federal Trade Commission unsuccessfully sought in district court a preliminary injunction against the merger of Beatrice Foods Co. and Tropicana Products, Inc., pending completion of administrative action against the combination. A motions panel of this court, with *Judge* McGOWAN dissenting, affirmed the denial of the injunction on Wednesday, August 2, and dissolved, as of 4 p.m. the following day, the administrative stay against the merger that had been entered by an earlier motions panel. On that next morning, Thursday, August 3, the Commission filed its motion for rehearing and suggestion for rehearing *en banc,* alleging that the trial court's findings of fact were insufficient. That afternoon the panel granted rehearing, extended the stay indefinitely, and remanded the record to the district court for specific findings of fact. The district court entered further factual findings the following morning, Friday, August 4. Although the FTC requested additional time to prepare a response to the findings of fact, the panel, acting on Friday afternoon without the participation of *Judge* McGOWAN, found those findings sufficient and ordered that the stay against the merger lapse at noon on Monday, August 7. The merger was consummated on Monday afternoon.[1]

Under the circumstances, there was no meaningful opportunity for consideration of the *en banc* suggestion prior to merger. In addition to problems of legal mootness with respect to the suggestion, it would obviously be fruitless to consider the matter further in a post-merger stance. Accordingly, I have decided to abstain from voting on the suggestion for *en banc* hearing. This will also serve to emphasize that the views of two judges on this court on the merits of the Commission's objection to the merger—and in this case the panel's order was entered on the basis of its view of the probable merits—are not to be taken as reflecting the views of the court. In general a vote against *en banc* or a failure to vote thereon is not to be identified as a view on the merits; that proposition is underscored when there has been no opportunity to focus on the merits in a meaningful and timely way.

Statement of *Circuit Judge* McGOWAN, on appellant's suggestion for rehearing *en banc.*

I have voted to grant the suggestion for rehearing *en banc,* and while there are now problems of mootness I do not withdraw that vote. I concurred in the remand, but did not have an opportunity to consider the matter after the filing of the district court's findings of fact on remand.

Statement of *Circuit Judges* MacKINNON and ROBB, on appellant's suggestion for rehearing *en banc.*

As members of the panel assigned to consider this case we thoroughly read and considered the entire 300-page transcript of the two-day hearing on the preliminary injunction together with all the extensive briefs of the parties. All the legal and factual issues are thoroughly presented and discussed therein and the record and briefs fully support the conclusion that the evidence sustains the judgment of the trial court and is insufficient to sustain the shifting contentions of the Federal Trade Commission. The reasons for our conclusions, evidenced by orders issued during the proceedings, were fully set forth in accompanying memoranda, and demonstrated that the panel was thoroughly familiar with the law, the facts and the issues, and that further argument was not necessary. (See Appendix)

---

1. Following the general practice of many of the members of this court, I deferred consideration of the initial suggestion for rehearing en banc to await final action by the panel. When the panel granted rehearing the suggestion was mooted. I was not advised of the panel's ultimate denial of the preliminary injunction until about 11 a.m. on Monday, August 7, too late for even minimal consideration of the case before completion of the merger. It follows, of course, that I have never voted on any matter in this case at any time.

*Judge* McGOWAN's inability to participate in the matter after the filing of findings of fact pursuant to our remand was caused by his absence from the city and our inability to reach him by telephone. It was accordingly necessary to show him as not participating, as our order reflects—rather than his prior position as dissenting, which would not have altered the court's order. Also the Clerk contacted all the available judges and the result indicated there were insufficient votes to order *en banc* consideration even if the two judges who could not be contacted voted for such rehearing. Actually, one of those judges subsequently voted against *en banc* hearing. *Judge* BAZELON was one of the first to vote. All orders issued contained a stay to permit request to the Supreme Court for further stay but the Commission did not make any such request.

### APPENDIX TO JOINT STATEMENT OF JUDGES MacKINNON AND ROBB

On July 8, 1978 the Federal Trade Commission having appealed from *Judge* HART's order denying a temporary restraining order, *Judges* FAHY and MacKINNON granted a stay until further order of the court to permit fuller consideration of the appeal. On July 10, 1978 *Judges* FAHY and McGOWAN, by order, noted that the Commission had not sought to enjoin the shareholders' meeting of Tropicana, and accordingly authorized the holding of that meeting to approve the proposed merger with Beatrice Foods, Inc. The stockholders approve the merger.

### I

On July 18, 1978 *Judge* HART, following a two-day evidentiary hearing, issued the following order in response to the petition of the Federal Trade Commission for a Preliminary Injunction to enjoin the acquisition by Beatrice Foods Company of Tropicana Products, Inc., which acquisition, originally scheduled for July 10, 1978, had been temporarily postponed.

### ORDER DENYING PRELIMINARY INJUNCTION

Upon consideration of the application for a Preliminary Injunction filed by the plaintiff herein, and after a hearing held on July 17, and 18, 1978, at which the Court received voluminous documentary evidence from both parties and heard six witnesses proffered by defendants, and after consideration of the weight and competence of the evidence and argument from counsel for all parties, it appears to the Court that Beatrice Foods Company and Tropicana Products, Inc. have not been shown to be competitors in the processing, distribution and sale of ready to serve orange juice on a national basis to any appreciable degree, and that such competition as exists between them nationally is *de minimus* [sic].

Therefore, after weighing the equities and concluding that it does not appear likely that the plaintiff will ultimately succeed and prevail on the merits, it is by the Court this 18th day of July, 1978,

Ordered, that the Application for a Preliminary Injunction be, and the same is hereby, denied.

/s/ George L. Hart, Jr.
GEORGE L. HART, JR.
United States District Judge

### II

The Commission appealed this order and on August 2, 1978, the current motions panel issued the following Judgment and Memorandum.

Before McGOWAN, MacKINNON and ROBB, *Circuit Judges.*

### JUDGMENT

This case came on to be heard on the original record on appeal and motions and other pleadings have been filed by the parties. Upon consideration of the foregoing, it is

Ordered and Adjudged, by the Court, that the judgment of the District Court on appeal herein is affirmed, for the reasons set forth in the attached memorandum.

*Per Curiam.*

**1228**

*Judge* McGOWAN would grant an injunction pending appeal, fix an expedited briefing schedule, and schedule oral argument for the September 1978 sitting period. *See FTC v. Food Town Stores, Inc.,* 539 F.2d 1339 (4th Cir. 1976); *FTC v. Lancaster Colony Corp.,* 434 F.Supp. 1088 (S.D.N.Y. 1977).

## MEMORANDUM

The Federal Trade Commission (FTC) is seeking to enjoin Beatrice Foods Co. (hereafter Beatrice) from acquiring "Tropicana" Products, Inc. (hereafter Tropicana). To this end it has petitioned this court, pursuant to section 13(b) of the Federal Trade Commission Act.[1] for a temporary restraining order and a preliminary injunction to prohibit Beatrice and Tropicana from carrying out the acquisition during the pendency of an administrative proceeding by the FTC under sections 7 and 11 of the Clayton Act[2] and section 5 of the Federal Trade Commission Act.[3]

When the matter was first here on appeal from the District Court's denial of a temporary restraining order the Motions Panel on July 8, 1978 issued an administrative stay to preserve the status quo to permit the court to consider the matter more fully. Thereafter on July 12 we continued the injunction to permit a further hearing before the District Court. Following that hearing the District Court refused to grant a preliminary injunction[4] and the FTC appeals from that decision.

Beatrice and Tropicana entered into a merger agreement as of April 27, 1978.

Thereby Tropicana would maintain its corporate identity and become a "wholly owned subsidiary" of Beatrice. All preliminary steps have been taken to complete the transaction which could have been completed on July 11, 1978, except for our administrative stay. The FTC contends that the merger would result in a single firm (Beatrice) controlling an undue percentage of the market in "ready to serve orange juice" sold to retail stores. It further alleges that other results would be a *"significant increase"* in the concentration of firms in that market; that it "would be likely to lessen competition substantially," Complaint § 5, and that the merger would eliminate Tropicana as an independent and viable competitive entity in the ready to serve orange juice industry. *Id.,* § 6.

Actually ready to serve orange juice is an infinitesimal part of the business of Beatrice, a minor side line of its dairy processing business, *Id.* 10. According to the testimony of a leading economist, who it was stated is regularly retained by the FTC and the Antitrust Division of the Department of Justice, the fiscal 1977 sales of Beatrice were over 6.3 billion dollars and its net earnings were $221 million while its sales of "ready to serve juice" only amounted to $1,500,000. Orange juice however is sold in other forms, principally in some frozen and concentrated forms. It is then reconstituted by merely adding water. The geographic market is alleged by the FTC to be the entire nation, but the question also arises as to whether the merger might bring about anti-competitive effects in a "Nine State

---

1. Section 13(b) provides:

 (b) Whenever the Commission has reason to believe—

 (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

 (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—

 the Commission by any of its attorneys designated by it for such purpose may bring suit

 in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond * * *.

 15 U.S.C. § 53(b).

2. 15 U.S.C. §§ 18, 21.

3. 15 U.S.C. § 45.

4. July 18, 1978.

Market" in the mid-continental area where Beatrice makes its principal sales.

The testimony of appellees' economist produced the following chart of the various orange juice markets:

| | Ready to Serve Juice | Ready to Serve Juice and Institutional Frozen | Ready to Serve Juice and All Frozen |
|---|---|---|---|
| U.S. Total | $780,000,000 | $950,000,000 | $2,000,000,000 |
| Tropicana | 157,000,000 | 157,000,000 | 157,000,000 |
| Beatrice | 1,500,000 | 1,500,000 | 1,500,000 |
| *Market Share* | | | |
| Tropicana | 20.1% | 16.5% | 7.8% |
| Beatrice | 0.19% | 0.14% | 0.075% |
| *9 State Market* | | | |
| Total (20%) | $156,000,000 | $190,000,000 | $400,000,000 |
| Tropicana | 8,500,000 | 8,500,000 | 8,500,000 |
| Beatrice | 750,000 | 750,000 | 750,000 |
| *Market Share* | | | |
| Tropicana | 5.5% | 4.4% | 2.1% |
| Beatrice | 0.5% | 0.39% | 0.19% |

In contrast to this showing the FTC relies upon a single "ready to serve orange juice" market and the so-called Neilsen statistics which the Beatrice economist testified understated the total industry sales by approximately 50%.

The Neilsen figures assert the following:

*Ready to Serve Orange Juice Sales*

| Tropicana | 160,900,000 gallons |
|---|---|
| " | 29% of nationwide market sales |
| Beatrice | 2,770,000 gallons |
| " | 1.7% of nationwide market sales |

Following a rather extensive hearing of oral testimony on the preliminary injunction and the submission of additional affidavits, depositions and exhibits the District Court on July 18 denied the request of the FTC for a preliminary injunction on the following grounds:

. . . [A]fter consideration of the weight and competence of the evidence and argument from counsel for all parties, it appears to the Court that Beatrice Foods Company and Tropicana Products, Inc. have not been shown to be competitors in the processing, distribution and sale of ready to serve orange juice on a national basis to any appreciable degree, and that such competition as exists between them nationally is *de minimus* [sic].

Therefore, after weighing the equities and concluding that it does not appear likely that the plaintiff will ultimately succeed and prevail on the merits, [the Court denied the application for a Preliminary Injunction].

We agree with the statement by the Federal Trade Commission as to the standard by which the proceeding must be judged:

The appropriate definition of the Commission's burden under Section 13(b) was articulated in *FTC v. Lancaster Colony Corp.*, 434 F.Supp. 1088, 1090 (S.D.N.Y. 1977), where the court held that "the FTC meets its burden on the 'likelihood of success' issue if it shows preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits." It amplified this standard by stating that, if the FTC made the requisite showing on the equities a preliminary injunction should issue if the FTC has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals. Cf. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953), enjoining a merger under the Clayton Act. [434 F.Supp. at 1090–91.]

FTC Brief, pp. 18–19.

In applying this standard at this stage of the proceeding we are also required to consider the inroads that the appellees' extensive showing has made on the proof submitted by the Commission. The appellees' proof has not been insubstantial. It has pointed out many weaknesses in the claims, theory and evidence of the FTC. As a result several basic contentions of the FTC are called into serious question. For example, the contradictory figures on the size, nature and location of the relevant market or markets strongly indicate basic flaws in the FTC theory and supporting data; and other deficiencies are referred to below. The FTC claim is also plagued by a theory that implicitly argues, in effect, that if the

 New York Yankees were to be acquired by Bloomington of the Three-I League, the shift of ownership would create a concentration of prior competitors that "would be likely to lessen competition substantially" and tend to create a monopoly in national baseball. But the *de minimis* amount of competition so added (here constituting according to the testimony of Dr. Gould, less than one-half of one percent of the national number), does not create the substantial reduction of competition that is necessary to constitute a violation of the antitrust laws.

It is apparent that the District Court found the market figures of appellees to be the more accurate and accordingly concluded it was unlikely that appellant would ultimately succeed and prevail on the merits because of the *de minimis* competition involved. It is perfectly obvious that if Beatrice's shares of the national and regional markets are only .19% and .5% respectively, as testified to by Dr. Gould, then Beatrice is insufficiently competitive in the national ready to serve orange juice market for the FTC to support the allegations of *substantial* competition that are contained in the complaint. The FTC seeks to support its attack on the court's findings by the Neilsen figures it presented at the hearing. We note, however, the deficiencies in these figures that were testified to at the hearings, including testimony that the Neilsen service was only relied upon for a limited purpose of establishing trend relationships in brand names, (Tr., July 17, 18, 1978, p. 226) and was not completely reliable and relevant for the purpose of this case. The Commission's figures also apparently involved some double counting of orange

juice sold by Tropicana to Beatrice and resold by the latter. (Tropicana Rep. Br., pp. 25–27), and the FTC engaged in some shifting of the relevant market by alleging in its District Court complaint that Beatrice and Tropicana were in competition in sales of "ready to serve orange juice directly or indirectly to retail merchants." (Complaint §§ 12, 13). The earlier complaint before the Commission referred generally to the "processing distribution and sale of ready to serve orange juice." (Complaint, § 13)

For the foregoing reasons, and on the record as a whole, since we cannot say that the District Court abused its discretion, we affirm its judgment.

*Judgment accordingly.*

### III

The very next day, on August 3, 1978, the Commission filed a Petition for Rehearing and Suggestion for Rehearing En Banc, with respect to the Judgment of this Court dated August 2, 1978. This Petition raised a point the FTC had not raised in its first appeal, i. e., that the District Court's July 18 order did not include specific findings as allegedly required by Rule 52, F.R. Civ. P.[1]

### IV

On the same day the FTC's Petition was filed, August 3, 1978, the motions panel granted rehearing and, notwithstanding that the FTC had not raised the issue initially, ordered the District Court promptly to file additional findings. This was directed by the following Order and Memorandum:

Before McGOWAN, MacKINNON and ROBB, Circuit Judges.

---

1. F.R. Civ. P. 52(a) provides: (a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly

erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

## ORDER

On consideration of appellant's petition for rehearing, it is

Ordered by the Court that the petition for rehearing is granted, and the order and judgment entered on August 2, 1978, are vacated. The judgment on appeal in No. 78–1673 is vacated and the record is remanded to the District Court for the prompt preparation of specific findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a) and in conformance with the attached memorandum, it is

Further Ordered by the Court that the injunctive orders entered by this Court on July 8th & 12th, 1978 are continued in effect pending further order of this Court.

Per Curiam.

## MEMORANDUM

The petition for rehearing by the FTC contends that the trial court's disposition of its petition for a preliminary injunction did not contain sufficient findings of fact and conclusions of law to satisfy F.R.Civ.P. 52(a). As the court's order indicates it did find the ultimate fact that the FTC had *not* made a showing of substantial competition between the parties to the merger. From such factual finding the court entered the conclusion of law that the FTC was unlikely to succeed on the merits. Obviously the facts could have been found more specifically.

The FTC's objection to the findings of the District Court is now raised for the first time. The FTC was aware of the trial court's findings with respect to Rule 52(a) because it referred to those findings in its brief to this court filed July 25, 1978, page 2, n.2, but instead of objecting to them *it relied thereon. Id.,* p. 2. If the FTC found fault with the failure of the trial court to find further facts, as pointed out in *McMahon v. Caribbean Mills, Inc.,* 332 F.2d 641 (10th Cir. 1964), it should have "[drawn] the trial court's attention to the objection . ." only now made to this court. Failing this, appellant has no standing to claim on appeal that the findings and conclusions are insufficient. We would accordingly be justified in denying the FTC's petition for rehearing on this ground. However, since the trial court conducted a full hearing we feel that the parties should receive the benefit of his further findings. Therefore we vacate our order of August 2, 1978 terminating the stay previously issued herein and direct the District Court promptly to enter specific findings of fact and conclusions of law. The record is remanded for that purpose.

## V

On August 4, 1978, the District Court filed the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the order of the United States Court of Appeals for the District of Columbia Circuit, filed August 3, 1978 in the above matters, the following findings of fact and conclusions of law are made:

### FINDINGS OF FACT

1. Tropicana Products, Inc. ("Tropicana") is a corporation organized under the laws of the State of Florida with its principal place of business in Bradenton, Florida. Tropicana's business is primarily the processing and sale of orange juice. Tropicana buys oranges and prepares fresh orange juice which is primarily distributed in glass containers. A substantial additional amount of the product is concentrated and sold as frozen orange juice in various sizes of containers including both small retail cans and larger "institutional packs".

2. Tropicana primarily distributes its products in New England, New York City, the East Coast, the Middle and South Atlantic states, Florida and the Gulf states. Eighty percent of the orange juice of Tropicana is sold in these areas.

3. Tropicana makes some sales in other states. In the 9-state area comprising the States of Ohio, Indiana, Illinois, Iowa, Mis-

souri, Kansas, Nebraska, Oklahoma and Colorado, (the "Nine State Area"), Tropicana's sales are approximately $8,500,000 annually to chains and wholesalers. Tropicana's total sales of fresh orange juice in glass and/or paper containers is approximately $157,000,000 annually.

4. Tropicana primarily sells its orange juice to chain warehouses and grocery wholesalers. The orange juice, primarily in glass containers, is distributed in refrigerated trucks directly to these warehouses. Such deliveries are made throughout the basic market of Tropicana as described above, and such deliveries are also made in the Nine State Area.

5. Tropicana has approximately 12 competitors, including major co-ops, in Florida that process orange juice from the fresh fruit and put it directly into cartons, bottles and cans.

6. Outside of Florida there are many companies who purchase frozen concentrate, add water to the concentrate and deliver it as fresh orange juice; further, there are many companies competing with Tropicana who place the frozen concentrate in retail or institutional cans which are sold to institutional outlets or retail stores. The fresh juice is prepared from that concentrate by having water added at the time the product is used either in the home or in the restaurant.

7. Beatrice Foods Co. ("Beatrice") is a large, diversified company which manufactures a wide variety of products. Beatrice is a Delaware corporation and is headquartered in Chicago, Illinois. It has annual sales of approximately $6,500,000,000.

8. The administrative complaint alleges, and this Court finds, that Beatrice in approximately 12 of its dairy plants, purchases frozen concentrate which is mixed with water in the plant and is packaged in paper or half gallon plastic containers and sold as fresh orange juice. The total outside sales of such reconstituted orange juice from the 12 plants is approximately $1,000,000. In addition, there is approximately $500,000 of orange juice reconstituted in the plants which is shipped interplant by Beatrice.

The total sales of reconstituted orange juice by Beatrice in the United States, thus, is approximately $1,500,000.

9. The majority of Beatrice's fluid milk business is in the Midwest in the Nine State Area identified above. In the Nine State Area there are 6 plants that reconstitute orange juice. They are located at: Dayton, Ohio; Zanesville, Ohio; Mattoon, Illinois; Lincoln, Nebraska; Tulsa, Oklahoma; and Greeley, Colorado. The total sales of reconstituted orange juice sold in the Nine State Area by Beatrice is approximately $750,000. The outside sales of the 6 above Beatrice plants are minor and range from $20,000 to $140,000 annually.

10. The orange juice sold by Beatrice is distributed in fluid milk trucks in the general area of the plant. A substantial portion of that distribution is to home delivery customers. In Lincoln, Nebraska, for example, one-third of the orange juice distributed from the Lincoln plant is sold to home delivery customers. Beatrice's milk trucks also distribute orange juice locally to small restaurants and institutions. Finally, a certain portion of the orange juice is distributed to local grocery stores, primarily those requiring direct delivery who do not purchase from warehouses or are not connected with any chain organizations.

11. Beatrice does not have any milk plants in the primary areas served by Tropicana in New England, the Mid-Atlantic states, Florida and the East Coast. The principal area of distribution of Tropicana is not served by Beatrice other than by a small milk plant in Durham, North Carolina.

12. Beatrice does not sell in the major cities such as Cleveland, Detroit, Chicago or Milwaukee. Beatrice does not sell orange juice to the chain warehouses and the wholesale grocers who are served by Tropicana. Beatrice and Tropicana do not compete because Beatrice sells its orange juice locally to home delivery customers, local restaurants and institutional customers and to smaller local grocery stores.

13. Within the Nine State Area, Tropicana's sales are primarily to the major metropolitan markets and all of the Beatrice sales are to the smaller city and rural markets.

14. Within the Nine State Area, there are approximately 1,200 dairy companies that compete with Beatrice. Each of these companies either sells a reconstituted orange juice—similar to Beatrice—or could easily supply the product, since it is processed and packaged by the same equipment on which fluid milk is processed and packaged.

15. The administrative complaint charges a violation of law in the "processing and sale" of ready-to-serve orange juice. Beatrice *processes and sells* $1,500,000 of orange juice annually. In addition, Beatrice purchases approximately $3,000,000 of orange juice from other sources. A substantial amount of that is purchased from Tropicana. Beatrice in Alabama, for example, purchases 600,000 gallons ($1.2 million at retail). The complaint does not charge any anti-competitive effects treating Beatrice as a buyer and Tropicana as a seller. Beatrice does not compete with Tropicana in the resale of the product purchased from Tropicana; rather Beatrice acts as a distributor for Tropicana selling to customers who primarily cannot buy directly from Tropicana. In view of the language of the complaint charging competition in *processing and sale* of orange juice, the appropriate figure to use to compare competition between Beatrice and Tropicana is the volume of orange juice reconstituted in the Beatrice plants since such juice involves both "processing and sale"; that total for Beatrice is $1,500,000 in the United States and $750,000 for the Nine State Area.

16. Beatrice and Tropicana do not compete nationally. Beatrice does not sell into the major markets and population centers serviced by Tropicana. While Tropicana sells throughout many states, the areas serviced by Tropicana have different competitors and different methods of distribution. There is no record evidence that buyers and sellers compete on a national basis.

17. Beatrice and Tropicana do make shipments into a Nine State Area, but within that area Tropicana and Beatrice are not competitors; any such competition is *de minimis.*

18. Defendants' expert witness, Dr. Jay M. Gould, is an economist who has specialized in market share statistics for approximately 25 years. He is customarily retained by the Department of Justice and the Federal Trade Commission. The Federal Trade Commission purchases his annual publications. Dr. Gould was the economist for the Department of Justice in the *Brown Shoe* case and his statistical exhibits appear in the appendix to that Supreme Court opinion. Dr. Gould is a qualified economist.

19. For purposes of analyzing the share of market, Dr. Gould analyzed and applied the Florida Citrus Commission statistics to the United States and the Nine State Area. These published statistics analyzed under Dr. Gould's accepted market share methods establish that in the Nine State Area the total size of the market varies from $156,000,000 to $400,000,000, depending upon the products included in the market; further, that the total sales in the United States varies from approximately $780,000,000 to approximately $2,000,000,000, again depending upon the products. Based upon this testimony, the Court makes the following finding as to market shares:

| | Ready to Serve Juice | Ready to Serve Juice and Institutional Frozen | Ready to Serve Juice and All Frozen |
|---|---|---|---|
| U.S. Total | $780,000,000 | $950,000,000 | $2,000,000,000 |
| Tropicana | 157,000,000 | 157,000,000 | 157,000,000 |
| Beatrice | 1,500,000 | 1,500,000 | 1,500,000 |
| *Market Share* | | | |
| Tropicana | 20.1% | 16.5% | 7.8% |
| Beatrice | 0.19% | 0.14% | 0.075% |
| *9 State Market* | | | |
| Total (20%) | $156,000,000 | $190,000,000 | $400,000,000 |
| Tropicana | 8,500,000 | 8,500,000 | 8,500,000 |
| Beatrice | 750,000 | 750,000 | 750,000 |
| *Market Share* | | | |
| Tropicana | 5.5% | 4.4% | 2.1% |
| Beatrice | 0.5% | 0.39% | 0.19% |

20. The market statistics relied upon by the Federal Trade Commission are based upon data of the A. C. Nielsen Company showing samples of brand representation in supermarkets. The Commission's statistics understate the total industry by approximately 50%, are based upon data only relied upon for the limited purpose of establishing trend relationships in brand names, involve some double counting of orange juice sold by Tropicana to Beatrice and resold by the latter and, thus, are not completely reliable. The Court rejects this evidence as inaccurate and unreliable and lacking probative value.

21. The Federal Trade Commission presented the conclusory affidavit of an economist, Dr. Stanley Boyle. The affidavit of Boyle, in turn, is based upon the affidavit of Eugene Waye, an attorney with the FTC who will try the administrative case. There is no showing that Boyle knew anything concerning the subject matter of the case other than what was gleaned from the Waye affidavit. The Court finds the affidavit of Boyle is totally lacking in credibility and contains certain assumptions that are not supported in the record and it is completely overcome by defendants' evidence.

22. The Commission's statistics involve double counting. This double counting arises when the Commission, using the Nielsen universe data (i. e. a projected national retail market), credits to Beatrice's share of that market its resales (approximately $3,000,000 in 1977) as a distributor of juice produced and packaged by others under the producers' (including Tropicana's) respective labels. Under Nielsen, these sales have already been attributed to the producers. When double counting is eliminated, Beatrice's share of the Nielsen market ($1.5 million compared to $300 million) is less than one half of one percent.

23. Consistent with the long standing practice of Beatrice, Tropicana will be operated as a completely separate and virtually autonomous subsidiary of Beatrice under the direction of the same management team that has profitably directed the business of Tropicana in the past. The evidence shows there will be no scrambling or merging of the assets of Tropicana into the assets of Beatrice, nor will there be any change in Tropicana's method of operation in the processing and sale of orange juice.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter pursuant to Section 13(b) of the FTC Act, 15 U.S.C. Section 53(b) and 28 U.S.C. Sections 1337 and 1345.

2. Venue is proper pursuant to Section 13(b) of the FTC Act and 28 U.S.C. Section 1391(c).

3. Before an injunction can be issued, petitioner must demonstrate that it has a fair and tenable chance of ultimate success on the merits.

4. Beatrice Foods Co. has a *de minimis* share of any three possible product markets: chilled orange juice; chilled orange juice with frozen concentrate sold to institutions; and chilled orange juice with all frozen concentrate.

5. In this case, charging an elimination of actual competition, Section 7 of the Clayton Act requires proof of the sections of the country in which to test the merger determined by those areas of effective competition involving the parties to the merger.

6. Beatrice and Tropicana are not competitors in the processing, distribution and sale of ready-to-serve orange juice on a national basis to any appreciable degree and such competition, if present, is *de minimis*. The United States is not an appropriate area of effective competition or section of the country in which to test the actual competition between Beatrice and Tropicana.

7. Beatrice and Tropicana both have shipments into the nine-state area which is the primary distribution area for the Beatrice milk plants. Within that nine-state area Beatrice in processing and selling orange juice, does not compete with Tropicana in the sale of orange juice or such competition, if any, is *de minimis*.

8. The Court has weighed the equities, considered the Commission's fair and tenable chance of ultimate success, and concludes that it has not been shown that the issuance of a preliminary injunction would be in the public interest.

/s/ George L. Hart, Jr.
George L. Hart, Jr.
United States District Judge

Aug. 4, 1978

## VI

Shortly after the filing of the Findings of Fact and Conclusions of Law, the Commission on August 4, 1978, filed an additional memorandum concerning appellate review.

## MEMORANDUM CONCERNING APPELLATE REVIEW OF DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. By order of August 3, 1978, this Court granted the petition of appellant Federal Trade Commission for rehearing, vacated its order and judgment of August 2 in this matter, and remanded the record to the district court for "the prompt preparation of specific findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a) and in conformance with the attached memorandum." The Court also continued its injunctive orders of July 8 and 12, 1978, preventing consummation of the merger in issue, "pending further order of this court."

2. On August 4, 1978, in response to this order, the district court issued and filed its findings of fact and conclusions of law. Although the Court apparently adopted proposed findings submitted by appellees, the Commission was given no opportunity to comment on them or to submit its own proposals prior to the District Court's action. We received the findings at approximately 10:15 this morning. Detailed review of these findings and conclusions has not yet been possible.

3. *The Wall Street Journal* of August 4, (at page 4) in reporting on this Court's order of August 3, attributes to the president of appellee Tropicana the expectation that the merger can be consummated on "Friday [August 4] or Monday [August 7]." This assertion appears to suggest that appellees will seek to have this Court's injunctive order vacated without any opportunity for appellant to address the merits of the newly-entered findings and conclusions.

4. Patently, if appellants were not to be permitted to argue the *merits* of the district court's findings and conclusions, the requirement of Rule 52(a) that they be made would be transformed into the emptiest sort of formality. As this Court observed in the *Saginaw Broadcasting Co.* case

> findings of fact serve the additional purpose, where provisions for review are made, of apprising *the parties* and the reviewing tribunal of the factual basis of the action of the court or commission so that *the parties* and the reviewing tribunal may determine whether the case has been decided upon the evidence and the law or, on the contrary, upon arbitrary or extralegal considerations. [*Saginaw Broadcasting Co. v. FCC*, 68 U.S.App.D.C. 282, 286, 96 F.2d 554, 559 (1938), *cert. denied*, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391.] [Emphasis added.]

Clearly the affirmance of the district court's findings and conclusions without affording appellant some chance to uphold its burden of demonstrating their infirmity would make a mockery of this Court's August 3 order.

5. Appellees have injected a spurious sense of urgency into this Court's deliberations by their assertions regarding the importance of August 4 as a deadline.[1] Its

---

1. If the *Wall Street Journal* accurately reported Mr. Barnebey's statement, it appears that he, too, does not consider the August 4 date as having any overriding significance.

significance is described at pages 4 through
6 of the appellees' Joint Proxy Statement

Exhibit V to Waye Affidavit. Copies of
those pages are attached for the Court's
convenience.* At the close of business to-

* Relevant portions are as follows:

### THE PROPOSED MERGER

The following information with respect to the proposed merger of Tropicana into a subsidiary of Beatrice (the "Merger") is qualified by reference to the Agreement and Plan of Reorganization ("Reorganization Agreement"), a copy of which is attached to this Joint Proxy Statement as Annex I, and the related Agreement and Plan of Merger ("Merger Agreement"), a copy of which is attached to the Reorganization Agreement as Exhibit A.

Manner and Basis of Converting Shares

Upon consummation of the Merger, Tropicana will be merged into a subsidiary of Beatrice which will change its name to "Tropicana Products, Inc." and succeed to the assets, liabilities and business of Tropicana. The subsidiary is a Florida corporation organized solely for that purpose. Each share of Tropicana Common Stock outstanding at the time the Merger becomes effective ("Effective Time of the Merger") will be converted into one share of Series A Cumulative Convertible Preference Stock of Beatrice ("Series A preference Stock") or the right to receive $52.00 cash. Shares of Beatrice Common Stock and Beatrice Preference Stock outstanding at the Effective Time of the Merger will not be affected by consummation of the Merger.

In the Merger no more than 60% and no less than 52% of the outstanding shares of Tropicana Common Stock will be converted into shares of Series A Preference Stock. Thus, the maximum and minimum number of shares of Series A Preference Stock issuable are 5,637,-822 and 4,886,112, respectively. In the Merger no more than 48% and no less than 40% of the outstanding shares of Tropicana Common Stock will be converted into the right to receive $52.00. Thus, the maximum and minimum amounts of cash payable by Beatrice are $234,-533,395 and $195,444,496 respectively. The cash to be paid by Beatrice to Tropicana shareholders in connection with the Merger will be obtained from several sources. Approximately $98,000,000 will come from the net proceeds realized from the sale outside of the United States of promissory notes by a wholly-owned financing subsidiary of Beatrice. See Note 8 under "Capitalization". The remaining portion of cash required will initially come from general corporate funds and from unsecured borrowings under lines of credit with domestic commercial banks. It is believed that eventually a substantial portion of the cash so expended will be refinanced through intermediate and long-term borrowings effected by a public offering of debt securities and/or private placements of debt securities.

Included with the material mailed to the Tropicana shareholders is an Election Form on which a Tropicana shareholder of record can specify the number of shares of Tropicana Common Stock which he desires to have converted into Series A Preference Stock in the Merger ("Stock Election") and the number of shares of Tropicana Common Stock which he desires to have converted into cash in the Merger ("Cash Election"). Tropicana shareholders who do not intend to vote in favor of the Merger should nevertheless give consideration to filing an election in order to avoid being treated as a nonelecting shareholder in the event that the Merger is approved by the Tropicana shareholders and consummated. In order to be valid, an Election Form must be completed in accordance with the instructions contained therein and returned, together with the certificates for the shares of Tropicana Common Stock for which elections have been made, to one of the agents named therein ("Exchange Agent") not later than the close of business (5:00 P.M.) on July 5, 1978 ("Election Date"). Any record holder of Tropicana Common Stock may at any time prior to the close of business on the Election Date change his election by written notice to the Exchange Agent accompanied by a properly completed revised Election Form or withdraw his election and his certificates for Tropicana Common Stock previously deposited with the Exchange Agent by written notice to the Exchange Agent. Any shareholder of Tropicana who shall have deposited certificates for shares of Tropicana Common Stock with the Exchange Agent shall again have the right to withdraw such certificates by written request and thereby revoke his election at any time after the expiration of the period of 30 days following the Election Date if the Merger shall not have been consummated prior thereto.

If Stock Elections are received for 60% or less of the outstanding shares of Tropicana Common Stock, all shares covered by such elections will be converted into Series A Preference Stock in the Merger. If Cash Elections are received for 48% or less of the outstanding shares of Tropicana Common Stock, all shares covered by such election will be converted into cash in the Merger.

If Stock Elections are received for more than 60% of the outstanding shares of Tropicana Common Stock, all shares of Tropicana Common Stock owned by non-electing shareholders will be converted into cash in the Merger and the shares for which Stock Elections were made will be converted into Series A Preference Stock and cash pro rata in the Merger in the following manner:

(a) a stock proration factor will be determined by dividing the total number of shares for which stock was elected into the maximum number of shares to be converted into stock in the Merger;

(b) the number of shares of each stock-electing shareholder to be converted into Series A Preference Stock in the Merger will be determined by multiplying the stock proration factor times the total number of shares for which such shareholder made a Stock Election; and

(c) the remaining shares for which such shareholder made a Stock Election will be converted into cash in the Merger.

If Cash Elections are received for more than 48% of the outstanding shares of Tropicana Common Stock, all shares of Tropicana Common Stock owned by non-electing shareholders will be converted into Series A Preference Stock in the Merger and shares for which Cash Elections were made will be converted into cash and Series A Preference Stock pro rata in the Merger in the following manner:

(a) a cash proration factor will be determined by dividing the total number of shares for which cash was elected into the maximum number of shares to be converted into cash in the Merger;

(b) the number of shares of each cash-electing shareholder to be converted into cash in the Merger shall be determined by multiplying the cash proration factor times the total number of shares for which such shareholder made a Cash Election; and

(c) the remaining shares for which such shareholder made a Cash Election will be converted into Series A Preference Stock in the Merger.

Any shares of Tropicana Common Stock owned by Beatrice at the Effective Time of the Merger will be excluded in determining the cash proration factor. For all other purposes any shares of Tropicana Common Stock owned by Beatrice at the Effective Time of the Merger shall be treated as outstanding shares for which a Cash Election was made, notwithstanding the fact that all such shares will be cancelled in the Merger.

If any cash or stock prorations are required to be made, they will be implemented by utilizing a uniform rule for rounding designed to avoid the creation of any fractional shares as a result thereof. It is anticipated that a fractional share will be rounded up to the nearest whole share for conversion into cash and rounded down to the nearest whole share for conversion into stock.

Any person who is shown as a record holder of Tropicana Common Stock on Tropicana's stock transfer records at the Effective Time of the Merger who does not make a valid election prior to the Election Date will be treated as a non-electing shareholder of Tropicana. If shares of Tropicana Common Stock owned by non-electing shareholders are not converted in the Merger under one of the two contingencies described above, all such shares will be converted into cash in the Merger if the sum of such shares plus the number of shares for which Cash Elections are received does not exceed 48% of the outstanding shares of Tropicana Common Stock. If such sum would exceed 48% of the outstanding shares of Tropicana Common Stock, names of non-electing shareholders will be drawn by lot and all shares of Tropicana Common Stock owned of record by those selected will be converted into cash in the Merger. Such selection by lot will cease when the sum of shares converted in that manner plus the number of shares for which Cash Elections are received is as close as is practicable to 48% of the outstanding shares of Tropicana Common Stock. All shares of Tropicana Common Stock owned by non-electing shareholders whose names are not drawn by lot will be converted into Series A Preference Stock in the Merger.

Reasons for the Merger and Basis of the Terms

The Boards of Directors of Beatrice and Tropicana have approved the Merger and recommend it to their respective stockholders.

Beatrice's management and Board of Directors believe that the transaction is beneficial to Beatrice because it will enable Beatrice to enter a new field which in their judgment has favorable growth prospects.

Tropicana's management and Board of Directors believe that the transaction is advantageous to its shareholders because (i) it enables them to receive Series A Preference Stock and to thereby obtain a preferred position as to earnings and assets in a more diversified and larger company, (ii) the exchange ratio for the Series A Preference Stock will provide Tropicana shareholders a higher annual dividend than that currently paid on the Tropicana Common Stock to be surrendered and (iii) as part of the Merger the Tropicana shareholders will have the right to elect cash, subject to the limitations described in "The Proposed Merger—Manner and Basis of Converting Shares". Moreover, to the extent the Tropicana shareholders receive Series A Preference Stock in exchange for their Tropicana Common Stock, the transaction will be a tax-free exchange. See "The Proposed Merger—Tax Consequences". In connection with the Merger, Tropicana retained the investment banking firm of Lehman Brothers Kuhn Loeb Incorporated ("Lehman") to act as its financial adviser. Lehman has rendered to the Board of Directors of Tropicana an opinion that the terms of the Merger Agreement are fair and equitable to Tropicana's shareholders from a financial point of view, i. e., that the financial consideration to be exchanged for shares of Tropicana Common Stock in the Merger is fair to such shareholders. The full text of Lehman's opinion is attached hereto as Annex II.

day, August 4, Tropicana's shareholders who tendered their shares simply acquire the right to withdraw those shares from the depository. Indeed, stripped of its somewhat breathless language, Tropicana's memorandum of August 2 asserts nothing more. That Tropicana may disapprove of some of the potential purchasers for shares of withdrawing shareholders is hardly a legally-cognizable injury.

## CONCLUSION

We submit that this Court should maintain its injunctive orders in effect to afford opportunity for briefing of the merits of this appeal, on an expedited schedule should the Court deem it appropriate. Failing that, at the minimum an opportunity should be afforded for supplemental memoranda addressing appellant's motion for an injunction pending appeal on the basis of the newly-entered findings and conclusions.

Respectfully submitted,

### VII

Later on August 4, 1978, the designated motions panel (Judge McGowan not participating) issued the following Order affirming the Judgment of the District Court and continuing the injunction until 12:00 o'clock noon, August 7, 1978, to permit the Commission to apply to the Supreme Court for further stay to allow possible petition for certiorari.

Before McGOWAN *, MacKINNON and ROBB, Circuit Judges.

## ORDER

Upon consideration of the Findings of Fact and Conclusions of Law filed this day in response to the remand of the record by this Court, and the Commission's memoran-

dum concerning appellate review filed this day, and upon consideration of the entire record, it appearing that these Findings and Conclusions fully support the District Court's earlier findings of ultimate facts and conclusions of law and also support the conclusions reached by this Court in its Memorandum of August 2, 1978, following our examination of the entire record, including the transcript of the District Court hearings, and it further appearing that this appeal involves the denial of the petition for preliminary injunction; it is

ORDERED by the Court that further rehearing by the panel of this Court is denied, the order and judgment of this panel of August 2, 1978 are reinstated except that the injunction previously granted by this Court is extended to expire at 12:00 o'clock noon August 7, 1978, and the judgment of the District Court on appeal in No. 78–1673 is hereby affirmed.

Per Curiam.

### VIII

Shortly after the issuance of the foregoing order the Federal Trade Commission delivered the following letter to the Clerk of this Court.

August 4, 1978

United States Court of Appeals
for the District of Columbia
United States Courthouse
Washington, D. C.

> Re: Federal Trade Commission, Appellant v. Beatrice Foods Co. and Tropicana Products, Inc., Appellees, Appellate Nos. 78–1635 & 78–1673

Your Honors:

The Federal Trade Commission will not seek review of the Court's August 4, 1978

---

The opinion sets forth the matters considered by Lehman and should be read in its entirety by all shareholders of Tropicana. In preparing its opinion, Lehman relied upon Tropicana and Beatrice with respect to accuracy and completeness of information provided by each company without independent verification. Tropicana has agreed to pay Lehman $750,000, including Lehman's expenses and certain legal

fees, if the Merger is consummated, and to reimburse Lehman for its reasonable out-of-pocket travel expenses if the Merger is not consummated. In addition, Tropicana has agreed to indemnify Lehman against certain liabilities, including certain liabilities under the federal securities laws.

* Judge McGowan did not participate in this order.

Order in this matter nor will the Commission attempt further in either this Court or the United States Supreme Court to prevent consummation of the merger of Tropicana Products, Inc. into Beatrice Foods Company.

Accordingly, the Federal Trade Commission suggests to this Court that its injunction preventing this merger until 12 noon Monday, August 7, 1978 be lifted immediately, and the merger be allowed to be consummated without further delay. And, therefore, we hereby so move to that effect.

Respectfully submitted,

/s/ Mark L. Davidson

MARK L. DAVIDSON
Assistant Director
Bureau of Competition
and one of the Attorneys for appellant Federal Trade Commission

## IX

Counsel for appellees meanwhile had delivered an Agreed Motion to Parties for Modification of the Court's August 4, 1978 Order "to permit the merger to go forward instanter."

AGREED MOTION FOR MODIFICATION OF ORDER OF
AUGUST 4, 1978

NOW COME the Appellees, Beatrice Foods Co. and Tropicana Products, Inc., and move the court for an order modifying its order of August 4, 1978 for the reasons stated below.

Appellees have been informed by counsel for the Federal Trade Commission that the Commission does not intend further appeal of this court's orders of August 2 and 4, 1978, affirming the district court's denial of a preliminary injunction and dismissing the complaint. Appellees, therefore, respectfully request that this court modify its order of August 4, 1978, to permit the subject merger to go forward instanter.

Counsel for the Commission has authorized us to represent to the court that the Commission does not object to a grant of the relief requested herein.

## X

Later in the evening of August 4, 1978, the FTC delivered the following letter to the Clerk of this Court.

August 4, 1978

*BY HAND*

United States Court of Appeals
for the District of Columbia
United States Courthouse
Washington, D. C. 20580

Re: Federal Trade Commission, Appellant v. Beatrice Foods Co. and Tropicana Products, Inc., Appellees, Appellate Nos. 78–1635 and 78–1673

Your Honors:

In our hand-delivered letter, addressed to this Court, of today's date, we advised that it was the Commission's wish to permit prompt consummation of the merger of Tropicana Products, Inc. into Beatrice Foods Co. However, this expression of the Commission's intention was premised upon the misapprehension that this Court had ruled not only on the Commission's Petition for Rehearing but also upon its Suggestion for *En Banc* Reconsideration. In a telephone conversation this evening with Judge MacKinnon of this court, we were advised that the Court has not as yet ruled upon the Suggestion for *En Banc* Reconsideration. It is the Commission's wish that such reconsideration be had and that a ruling on its suggestion be made.

Accordingly, we hereby advise this Court that the Commission wishes to withdraw the motion made today by letter of August 4, 1978 and opposes any lifting of the injunction presently in force preventing consummation of the challenged merger until this Court has ruled upon the Commission's Petition and Suggestion for *En Banc* Reconsideration.

Respectfully submitted,

/s/ Mark L. Davidson

MARK L. DAVIDSON
Assistant Director
Bureau of Competition
and one of the Attorneys for appellant Federal Trade Commission

In view of this latter letter withdrawing consent to an immediate merger no action was taken upon the appellees' motion to authorize the immediate completion of the acquisition.

### XI

At 12:00 o'clock noon, on August 7, 1978, the stay previously granted having expired, and no stay having been requested from the Supreme Court, the parties were free to complete this acquisition.