**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**The SOUTHLAND CORPORATION**
**et al., Defendants.**

Civ. A. No. 79–1138.

United States District Court,
District of Columbia.

Findings of Fact and Conclusions of
Law May 18, 1979.

On Motion for Preliminary Injunction
May 18, 1979.

David C. Shonka, Federal Trade Commission Washington, D. C., for plaintiff.

Peter K. Bleakley, Arnold & Porter, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN LEWIS SMITH, Jr., District Judge.

### Findings of Fact

#### A. The Parties

1. Southland is a corporation organized under the laws of the State of Texas with its corporate headquarters located in Dallas, Texas. Southland operates convenience food stores under the trade name "7-Eleven" in many areas of the United States and also operates a number of fluid milk processing plants in several states. Southland has two dairy divisions in the State of Texas—Cabell's and Oak Farms. Southland's Oak Farms Division has fluid milk processing plants in Dallas and Houston.

2. Defendant Knowlton's is a corporation organized and existing under the laws of the State of Texas with its principal place of business in San Antonio, Texas. Knowlton's is a family-owned firm engaged in the processing and sale of dairy products primarily in the San Antonio metropolitan area. It also operates nine milk and ice cream stores in the city of San Antonio. It reported total sales in 1978 of $10,988,000, of which $4,009,000 were Class I milk products (including $673,000 in home delivery sales to consumers). It processed over 44 million pounds of Class I fluid milk in 1978. In that year Knowlton's was the third largest wholesale distributor of milk in the San Antonio SMSA with 10.6% of that market. Likewise 7.0% of all milk sold at retail in the San Antonio SMSA was processed by Knowlton's, which ranked fourth in that market.

3. On January 31, 1979 Southland and Knowlton's entered into an agreement by which Southland agreed to acquire all the assets of Knowlton's. At the time this action was initiated the acquisition was to be consummated on April 30, 1979. However, Southland and Knowlton's have agreed to postpone the acquisition pending this Court's resolution of the case.

4. The Federal Trade Commission has issued an administrative complaint challenging the proposed acquisition under Section 7 of the Clayton Act, 15 U.S.C. § 18 (1976), and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976), and has moved this Court for an order preliminarily enjoining the acquisition pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (1976).

#### B. The Relevant Market

5. There are two possible product markets in which the acquisition can be assessed: (1) the processing and wholesale distribution of packaged fluid milk, ("the distribution market"); and (2) the processing, distribution and sale of packaged fluid milk ("the sales market").

6. The Federal Trade Commission alleges that the relevant "section of the country" or "geographic market" in which Southland's acquisition of Knowlton's should be evaluated is the San Antonio Standard Metropolitan Statistical Area (SMSA), consisting of the Texas counties of Bexar, Comal and Guadalupe. Defendants Southland and Knowlton's, on the other hand, argue that the relevant geographic market is considerably larger than the San Antonio SMSA.

7. Both Knowlton's and Southland meet and compete directly with each other in the San Antonio area. Both companies sell a portion of their product in their own stores and distribute portions of their output to other commercial and institutional outlets.

8. There are four milk processing plants located in the San Antonio SMSA. These are operated by Borden, Foremost, Knowlton's and H.E. Butt, a supermarket chain. Knowlton's sells over 90% of its output in the San Antonio SMSA but also delivers milk to Austin, 77 miles from San Antonio, and to Uvalde, approximately 80 miles west of San Antonio. Borden, Foremost and

H.E. Butt all sell a significant percentage of their processed fluid milk to areas outside of the San Antonio SMSA, including Austin; Del Rio, 149 miles west of San Antonio; and Laredo, 153 miles southwest of San Antonio. H.E. Butt supplies all of its stores in south Texas, including those in Waco, 178 miles to the north of San Antonio, and Houston, 197 miles east of San Antonio. Foremost serves these areas and supplies the Corpus Christi area from its San Antonio plant as well.

9. Dairy processing plants located outside of the San Antonio SMSA are effective competitors in San Antonio. Superior Dairy in Austin, Pure Milk Company in Waco, Southland's Oak Farms Division and Schepp's Dairy in Dallas (270 miles from San Antonio), Marigold Dairy in Fort Worth (270 miles from San Antonio), and Preston Milk Company in Burkburnett (345 miles to the north) sell milk in San Antonio.

### C. *Hold Separate Agreement*

10. At the arguments on April 27, 1979 and May 10, 1979, Southland indicated its willingness to enter into a hold-separate agreement with the FTC under which Southland would maintain Knowlton's as a separate corporation. The agreement would remain in effect for the duration of the administrative proceedings.

11. The Commission's complaint contemplates divestiture as a final remedy in the case.

### *Conclusions of Law*

1. Jurisdiction is conferred by Section 13(b) of the FTC Act (15 U.S.C. § 53(b)) and by 15 U.S.C. § 22 and 28 U.S.C. §§ 1337 and 1345. Venue is proper in this district under Section 13(b) of the FTC Act and 15 U.S.C. § 22 and 28 U.S.C. § 1391(c). Southland and Knowlton's are engaged in "commerce," as defined in Section 4 of the FTC Act (15 U.S.C. § 44) and Section 1 of the Clayton Act (15 U.S.C. § 12).

2. This proceeding arises under Section 13(b) of the FTC Act (15 U.S.C. § 53(b)). That statute requires the Court to issue injunctions in the public interest and directs the Court not to apply traditional equity standards. The question whether the acquisition actually violates the antitrust laws is reserved for the Commission and is not before this Court. The Commission meets its burden "if it shows preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits." *FTC v. Beatrice Foods Co.*, 190 U.S.App.D.C. 328, 332, 587 F.2d 1225, 1229 (1978), quoting *FTC v. Lancaster Colony Corp., Inc.*, 434 F.Supp. 1088, 1990 (S.D.N.Y.1977); *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1342 (4th Cir. 1976).

3. In applying this standard and determining whether the Commission carries its burden the Court should also consider any inroads made on the proof submitted by the Commission by the defendants. *FTC v. Beatrice Foods Co., supra.*

4. The FTC alleges that the relevant "geographic market" in this case should be the San Antonio SMSA; Southland argues that the relevant geographic market is larger than the San Antonio SMSA.

5. "The appropriate 'section of the country'" for purposes of Section 7 is not necessarily "where the parties to the merger do business or even where they compete, but where, within the area of competitive overlap, the effect of the merger on competition will be direct and immediate." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 357, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963); *F. & M. Schaefer Corp. v. C. Schmidt & Son, Inc.*, CCH 1979–1 Trade Cas. at 77302–03. Likewise in assessing the commercial realities of a proposed market courts have posed a simple test: "[w]here, as a practical matter, can the purchaser turn for alternatives?" *FTC v. Food Town Stores, Inc., supra*, 539 F.2d at 1344, citing *United States v. Connecticut Nat'l Bank*, 418 U.S. 656, 668, 94 S.Ct. 2788, 41 L.Ed.2d 1016 (1974).

6. A single metropolitan area may be an appropriate geographic market in which to assess the effects of an acquisition.

**4**

*Brown Shoe Co., Inc. v. United States,* 370 U.S. 294, 336–37, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962); *United States v. Philadelphia Nat'l Bank, supra; F. & M. Schaefer Corp. v. C. Schmidt & Son, Inc. supra,* CCH 1979–1 Trade Cas. at 77302.

7. The defendants' proof refuting the plaintiff's stated market has not been insubstantial in this case. It has pointed out many weaknesses in the claims of the Commission that the relevant geographic market should be confined to the San Antonio SMSA and the theory and evidence supporting that claim.

8. As in *Beatrice Foods, supra,* this case contains contradictory figures on the size, nature and location of the relevant market or markets, strongly indicating basic flaws in the FTC theory and supporting data.

9. In assessing the "commercial realities" of the proposed market according to the test set forth in *Food Town Stores, supra,* and *Connecticut Nat'l Bank, supra,* it appears that a purchaser has many possible alternative sources of supply outside the San Antonio SMSA. Superior Dairy in Austin, Pure Milk in Waco, Southland's Oak Farms and Schepp's Dairy in Dallas, Marigold Dairy in Fort Worth and Preston Milk in Burkburnett all sell milk in San Antonio from distances as far away as 345 miles. Likewise, the four companies which have milk processing plants in San Antonio— Borden, Foremost, Knowlton's and H.E. Butt—all sell processed fluid milk to areas outside the San Antonio SMSA, including Austin, Uvalde, Del Rio, Laredo, Waco, Houston and Corpus Christi.

10. The evidence presently available to the Court does not provide a basis for ascertaining the precise boundaries of the actual relevant geographic market. It does appear, however, that in following the tests for determining relevant market and based upon the proof submitted a purchaser in San Antonio can look outside the San Antonio SMSA for supplies, and a supplier outside the San Antonio SMSA can sell his products in San Antonio both at the wholesale level, and at the retail level through San Antonio stores which purchase its prod-

uct. Since the Commission has not met its burden of defining an appropriate relevant geographic market, it is impossible to determine on the evidence before the Court the market shares of the acquiring and the acquired firms and the level of concentration in the relevant market.

11. In view of the foregoing, the FTC has not carried its burden on the likelihood of success, since it has failed to show preliminarily by affidavits or other proof that it has a fair and tenable chance of ultimate success on the merits.

12. The FTC complaint contemplates divestiture as an ultimate resolution. The parties to the acquisition, Southland and Knowlton's have offered to enter into a "hold-separate" agreement with the FTC, pursuant to which Southland would maintain Knowlton's as a separate corporation with its own management pending completion of the Commission's adjudicative proceedings. Pursuant to this hold-separate agreement, Knowlton's would be preserved as a viable competitive entity, and there would be no co-mingling of the assets of the two companies.

13. The Commission asserted that entry of a hold-separate agreement could result in such harm as elimination of Knowlton's ability to set prices independent of Southland, sharing of customer lists, and servicing and distribution facilities. Although the hold-separate agreement does not specifically address these problems, counsel for defendants indicated that defendants would include those specific provisions in the agreement.

14. After weighing the equities and considering the Commission's fair and tenable chance of ultimate success, the Court concludes that it has not been shown that the issuance of a preliminary injunction would be in the public interest. However, the Court further concludes that the entry of a hold-separate agreement incorporating the provisions in the hold-separate agreement outlined in the April 23, 1979 letter to Mr. Sharp from Peter R. Bleakley and incorporating provisions regarding indepen-

dent price setting, and prohibiting sharing of customer lists, and servicing and distribution facilities, would be in the public interest.

### ON MOTION FOR PRELIMINARY INJUNCTION

In this action the Federal Trade Commission (FTC) is seeking a preliminary injunction restraining the consummation of an acquisition pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). The challenged action concerns an acquisition by Southland Corporation, an operator and franchisor of a chain of convenience food stores and a processor of dairy products, of Knowlton's, a firm engaged in the processing and sale of dairy products in the San Antonio, Texas metropolitan area. The FTC alleges that the transaction would impair competition in the fluid milk industry and would, therefore, violate Section 7 of the Clayton Act, 15 U.S.C. § 18 and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976). The matter is before the Court on plaintiff's motion for preliminary injunction.

Section 53(b) provides that "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest . . . a preliminary injunction may be granted without bond." In *FTC v. Beatrice Foods Co.,* 190 U.S.App. D.C. 328, 587 F.2d 1225 (1978) the Court of Appeals for this Circuit addressed itself to the standard for granting a preliminary injunction. The Court agreed with the Commission that as stated in *FTC v. Lancaster Colony Corp.* "the FTC meets its burden on the 'likelihood of success' issue if it shows preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits." The Court also stated that "[i]n applying this standard at this stage of the proceeding we are also required to consider the inroads that the appellees' extensive showing has made on the proof submitted by the Commission." That is the standard to be applied in this case.

Here the plaintiff has alleged that the relevant geographic market is limited to the San Antonio SMSA, and that the two parties to the acquisition rank third and fourth and fourth and fifth in the two relevant submarkets, distribution and sales, in a highly concentrated market. Plaintiff has filed affidavits of officials of competitors to the parties in this action to support its definition of the relevant market. Defendants subsequently submitted affidavits of these same people refuting and clarifying the positions taken by the FTC. These affidavits state that the relevant market is not limited to the San Antonio SMSA and that there is competition and a price relationship between various Texas cities. The other affidavits are submitted by FTC employees or experts who based their testimony solely on material furnished to them by the Commission. In *Beatrice Foods, supra,* the Court faced a similar situation. It stated:

> For example, the contradictory figures on size, nature and location of the relevant market or markets strongly indicate basic flaws in the FTC theory and supporting data . . . . The Federal Trade Commission presented the conclusory affidavit of an economist, Dr. Stanley Boyle. The affidavit of Boyle, in turn, is based upon the affidavit of Eugene Waye, an attorney with the FTC who will try the administrative case. There is no showing that Boyle knew anything concerning the subject matter of the case other than what was gleaned from the Waye affidavit. The Court finds the affidavit of Boyle is totally lacking in credibility and contains certain assumptions that are not supported in the record and it is completely overcome by defendants' evidence.

The District Court found that given the above there is no likelihood that the plaintiff would ultimately succeed on the merits and denied the injunction. This decision was upheld on appeal, and affirmed *en banc.*

This Court finds that a similar situation exists here. Plaintiff's contentions of relevant geographical market, and statistics

concerning concentration in that market, are outweighed by defendants' evidence. Therefore after weighing the equities, and considering the fact that it does not appear likely that the plaintiff will ultimately succeed on the merits, the motion for preliminary injunction should be denied. The ultimate remedy contemplated by the Commission at the end of the administrative proceedings would be divestiture if an antitrust violation is found. Southland has offered to enter into a "hold-separate" agreement, pursuant to which it would maintain Knowlton's as a separate corporation pending completion of the administrative proceedings. This would be in the public interest and this Court will order the parties to enter into such an agreement. Accordingly, plaintiff's motion for preliminary injunction will be denied.

### ORDER

Upon consideration of plaintiff's motion for preliminary injunction pursuant to Section 13(b) of the Federal Trade Commission Act (15 U.S.C. § 53(b)), memoranda in support thereof and in opposition thereto, affidavits and exhibits presented by counsel for the parties and oral argument, and after weighing the equities and considering the Commission's likelihood of ultimate success on the merits, the Court concludes that a preliminary injunction is neither necessary nor appropriate in the public interest. Accordingly, it is by the Court this 18th day of May 1979

ORDERED that plaintiff's application for a preliminary injunction is denied; and it is further

ORDERED that the parties enter into a "hold-separate" agreement, to continue in effect during the pendency of the administrative proceedings, containing provisions 1 through 8, outlined in the April 23, 1979 letter, attached hereto, and additional provisions requiring the maintenance of a structure which allows independent price setting between Southland and Knowlton's, and prohibiting sharing of customer lists, and servicing and distribution facilities.